IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRYAN VON-ANDERSON HILL | : |
| Plaintiff | : |
| v | :     Civil Action No. WDQ-05-876 |
| THOMAS GOLDEING[1], *et al.* | : |
| Defendants | : |

o0o

**MEMORANDUM**

The above-captioned civil rights action was filed on March 31, 2005 alleging that plaintiff was assaulted and wrongfully punished by defendants following an incident that occurred at the Harford County Detention Center. Paper No. 1. Now pending is defendants' motion to dismiss or for summary judgment. Paper No. 7. Plaintiff was advised of his right to file a response in opposition to the motion, and of the consequences of failing to do so, but he has failed to oppose the motion.[2] Paper No. 8. For the reasons that follow, the motion, which shall be construed as a motion for summary judgment, shall be granted.[3]

**Background**

Plaintiff claims that on October 20, 2004, while an inmate at the Harford County Detention Center, he was maced and shocked several times with tasers by correctional officers after another inmate threw his food tray against a cell door. Paper No. 3 at p. 1. Plaintiff alleges that he gave no indication to the officers that he was resisting any lawful orders, but nonetheless:

---

[1] The Clerk shall amend the caption of the docket to reflect the proper spelling of defendant's name.

[2] While this case was pending plaintiff was transferred to Maryland Correctional Institution in Hagerstown (MCI-H). Notice of the dispositive motion was sent to plaintiff at that address.

[3] No hearing is needed to resolve the pending motion. *See* Local Rule 105.6 (D. Md. 2004).

was forced to strip; had the water to his cell cut off; and was fed "warden waffles"[4] for a period of seven days. *Id*. He further claims that no formal disciplinary action was taken against him.

Defendants claim that on October 20, 2004, at 11:30 p.m., Deputy Sheriff Vazquez noticed one of the walls of was covered with wet toilet paper. Paper No. 7 at Ex. 1. When he asked for volunteers to clean it up, no one volunteered or took responsibility for the deed. *Id*. On October 21, 2004, at 1:13 a.m., Deputy Hoffman noticed the toilet paper on C-Block, asked who was responsible, and received no response. *Id*. at Ex. 3. Later that morning, after breakfast trays had been served, the inmates on C-Block were informed that the tier would be locked down until the toilet paper was cleaned up. *Id*.

Shortly after leaving C-Block, Deputy Hoffman heard the sound of food trays being thrown and laughter coming from the area. *Id*. He then discovered that all but three [5] inmates on C-Block had thrown their food trays. It was decided that the inmates who threw their trays were to be served "warden waffles" for the next 24 hours and the entire tier would remain on lock down. *Id*. Lt. Keggins inspected the C-Block area at approximately 7:30 a.m. and observed large amounts of wet toilet paper, coffee, and food on the walls, cell bars, and floor. *Id*. at Ex. 4. Lt. Keggins then ordered all personal property, with the exception of shorts, shirts and mattresses, removed from the inmates' possession temporarily. *Id*. During this incident, an officer was hit in the back with a ball of wet toilet paper. *Id*. at Ex. 5.

---

[4] Warden waffles are another name for a food product known as Nutraloaf. Paper No. 12. The meal is prepared in accordance with a recipe, provides adequate nutrition and calories, lacks any discernible flavor, and provides no enjoyment in eating. *Id*. and Ex. 1. The meal is served to inmates who demonstrate an unwillingness to consume food or use eating implements in an appropriate manner. *Id*.

[5] The three inmates who did not throw their trays were James Hamilton, Krsna Johnson and Manuel Rivera.

**Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear
> the burden of proof at trial on a dispositive issue, a summary

> judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**Analysis**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm". *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This court must look at: the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). In the instant case, there is no evidence,[6] other than plaintiff's initial allegation, that any force was used against any of the

---

[6] Defendants do not assert that weapons or chemical agents were ever used by any of the officers responding to the area.  Plaintiff has failed to oppose defendants' motion for summary judgment with an affidavit or other sworn document disputing that assertion.

inmates on C-Block.    The crux of the case is whether subjecting plaintiff to the disciplinary measures employed by defendants amount to cruel and unusual punishment.

In the prison context there are two different types of constitutionally protected liberty interests which may be created by state action.  The first is created when there is a state created entitlement to an early release from incarceration.  *Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state created liberty interest in good conduct credits).  The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995).

Temporary deprivation of personal property, confinement to one's cell, and receipt of a limited menu do not amount to imposition of atypical and significant hardship.  It is certainly not outside the realm of expectation that disciplinary measures would be taken in response to an entire housing unit destroying property.  The task of insuring a safe environment at a jail is a difficult one best left to the expertise of those charged with that daily responsibility.  While the behavior at issue in this case may appear harmless in any other context, in the prison context it is not.  The actions taken by defendants were justified and restrained under the circumstances.  Accordingly, the motion for summary judgment shall be granted by separate order which follows.

September 13, 2005 /s/
Date William D. Quarles, Jr.
United States District Judge